Our next case for today is 2016-2716 Faro v. Matal. Good morning, Your Honor. May it please the Court. My name is John Faro. I'm appearing here pro se. This case arises out of an appeal of the denial of my petition for writ of mandamus to the District Court in the Eastern District of Virginia. Mr. Faro, why are you unwilling to wait until you get a decision? Why? I think that the decision in this case is unfairly predicated on the exclusion of certain evidence that should have been introduced at the time of the probable cause determination. But all that would be before the court or whoever is going to review this after the decision. Respectfully, Your Honor, I don't believe that's correct. The issue as I understand it, and I will have to defer to you in this case, obviously, there was a series of lawsuits filed. There were three concurrently prosecuted complaints against me. Now, the practice before the OED is fairly rigid in terms of what is required both of myself and of the OED. Do they make a record? That's not quite. It's oversimplification of what's required. When the OED gets a complaint from a client, they send out a request for information called an RFI. There's all kinds of litigation with this kind of inquiry. The inquiry to me requests that I produce information. And the second paragraph, this is Appendix, page number 201. I'm reading from the second paragraph. This is addressed to me. You understand that the OED must develop all information regarding the information received, including that information which may justify or exonerate the alleged actions of the registered practitioner or mitigate the seriousness of any violation. That's what's required in terms of an interpretive decision of, as I understand it, 37 CFR 11.22d. So the record, as I understand it, which goes to the Committee on Discipline, must then be inclusive of information which they say has to be there that will justify, exonerate, or mitigate the seriousness. Can I make sure I understand procedurally? 11.22d is what has to be considered by the OED investigation in order to form a determination of probable cause. Is that right? No. The OED director is an investigator at this phase of the process. He doesn't make any determinations. He is a collector of information. So the universe of information that he has to collect is defined by, I assume, an interpretive decision which was issued pursuant to 37 CFR 11.22d. And as far as the information requested from me, Your Honor, the information is to justify, exonerate, or mitigate the seriousness of the charges. Now, in this case, I'm going to go through the chronology briefly. This has been going on since 2012, outside of this environment. In 2013, I was sued for malpractice in the Southern District of Florida. That was in October 2013. In May of 2014, I get a bar complaint with the Florida Bar and a complaint with the OED. Identical issues, identical facts, identical complaints. But I guess I'm still back at the question that Judge Plager asked you initially, which is your argument to us seems to boil down to the investigation was prematurely ended before all of the fact findings in the Florida litigation, which were favorable to you, could have been included in that record. I understand, Your Honor. Is that your argument? Am I understanding your argument? That's part of it. Okay, well, but what Judge Plager was suggesting to you is that seems like it could very well be a legitimate complaint about the scope of the investigation, not including all of the evidence it should have. But I thought his question to you was, but why couldn't you raise exactly that argument after you get a final decision by the PTO? Because we get lots of cases in district court where the district court excluded pieces of evidence and we get a judgment that comes up to us and one of the challenges is it was wrong to have excluded that evidence and we have to send it back for a new trial. This is not analogous to that. It's not? No, I don't think so. And let me explain to you why, if I can. The petition was denied by the district court because I didn't explain how and why one of the exceptions to finality of exhaustion would apply. That's on page 6 of the opinion. How and why was documented in the record, I just ran out of time to explain it. When the process of the complaint was filed, now in May by the OED after the probable cause filing, the complaint was filed by the OED in May of 2015. There was a trial scheduled in August of 2015. If this means anything that the OED must develop a record which includes information to justify, exonerate, mitigate, then the OED prematurely concluded its investigation. Do you have any authority for the proposition that an appellate court can step in to an administrative agency process and find it erroneous or inadequate prior to the time the agency makes a decision? That's what's puzzling me about your case, Mr. Farrell. Do you have any authority for that? Thunder Basin decision. The Supreme Court case in Thunder Basin, 510 U.S. 200. If you read the exceptions, the exceptions to exhaustion and final order appearing on page 212 to 213, in this case I fall within the exceptions. And that's the argument that I was making to the district court, and I hadn't concluded my argument. In this case, there's been an administrative determination by the ALJ that my effort to introduce the impropriety or premature conclusion of investigation was a determination made by the ALJ that it wasn't an affirmative defense, so it couldn't be asserted as part of the judicial review are subject to the exception of finality and exhaustion. That's the law. Are you saying this is an argument that you weren't able to make to the district court? No, the district court cut me off. I'm long-winded, as you can tell. Did you put it in your brief? Yes, it's in the record. If I may, Your Honor, it's in the record to the district court. There was a declaration that I submitted to the district court. I lost my notes here. I'll get it for you in a second. There was a declaration I submitted to the district court in opposition to the jurisdiction, the challenge to the jurisdiction. And I said that the issue of failure to conform the investigation to the rules of the OED was not going to be entertained within the merits determination. And I cited in that, if you'll give me a second, I'll find it here, the motion. The supportive information was in the record before the district court. It appears at 512 to 535, and the discussion is in my brief at pages 28 to 30. The information which I relied upon is the declaration and exhibits appearing in my appendix 512 to 535. That declaration included a copy of my attorney's motion to amend the affirmative defenses and the order by the ALJ denying the motion. The OED opposed the motion because they said that my affirmative defense challenging the investigation was not compliant with the rules, 37 CFR 11.36D. They took the position that my affirmative defense had no nexus to discipline. In other words, it wasn't related to an allegation of misconduct. So under my understanding of the law, if it's not related to the merits, then it's collateral, a collateral matter that cannot be subject to meaningful judicial review, is subject to an exception to finality and exhaustion. That's the law. There are extensive cases listed in the Thunder Basin decision, pages 212 to 213. My position here is not unique, not exotic. Where there's no meaningful judicial review possible, there's no exhaustion requirement. You're saying there's no meaningful review could have happened later. That's correct. Had there been a final decision, you would not have been able to raise the argument. That's correct. And there's one more point that I want to make, which is very important. And I didn't raise it initially in my brief because I missed the legal characterization. I asserted in my initial brief that the judicial estoppel doctrine applied. That's incorrect. What applies is something called administrative estoppel, which I cited in my reply brief. Administrative estoppel in this case applies because the ALJ, in the merits determination, said it was collateral and thus not subject to the review at a later point in time. You're asking the district court for a mandamus order? That's correct. To compel the director to require the investigation comport with the requirements of the rules. Okay? And I request it in abatement. I didn't request it. I wasn't attacking, which is very important. I wasn't attacking the merits determination. I wasn't indicating that this was a collateral attack on the proceedings. I just want to reset the clock. Now, why would I want to do that? It's a real good reason for that. Because if they have to reset the clock, there's a substantive effect, which is beneficial to me. Then they've got to refile this thing. This goes back to 2002. The nonsense in this patent application goes back to 2002. There's a stash of limitations that kicks in if they abate this and have to refile it. This case goes away. And that's the purpose of my challenging this. Well, part of the reason it's been going on so long, Mr. Farrow, is because you keep litigating it before they even make a decision. That's an unfair characterization. I'm being penalized now to defend myself in this case. Is that the purpose? Is that your comment? I didn't start this. There were 9 or 10 allegations of misconduct. This case was looked at by the federal district court. It was looked at by the Florida Bar. Both of them found there was no misconduct. None. What the OED did here is they prematurely concluded their investigation before the district court had an opportunity to make its findings and rulings. So they excluded from consideration by the Committee on Discipline findings which were inconsistent. Mr. Farrow, you're using up your rebuttal time. Do you want to save it? If you have more questions, I prefer to get this issue on the table. I'll defer now if you want. Thank you, ma'am. Mr. Hahn. Mr. Hahn, the key question from my viewpoint about this case is, are the kinds of concerns he's been expressing things that will be either taken up by your agency or reviewable on appeal from your agency, or is he right that his position will be precluded because of the agency's unwillingness to hear the early dismissals of his misconduct stuff? Your Honor. Explain that to us. Absolutely, Your Honor. And I believe that the former characterization that you put forth is the more accurate view, that Mr. Farrow will absolutely have the opportunity to raise all of the objections that he had to both the OED investigation as well as to the underlying disciplinary proceedings that are still ongoing in district court through a Section 32 complaint, if he is ultimately determined to be suspended or excluded. What is the current status of his case in your agency? It is currently on a motion for reconsideration of the PTO director's final decision. I believe that that motion for reconsideration that Mr. Farrow has submitted and he has a right to under the regulations is either currently being briefed or has just finished being briefed, and, therefore, now it would be in the hands of the PTO director to consider that motion and render a decision on that. And then once that is finalized, if the final decision, which currently does recommend or does impose an eight-month suspension on Mr. Farrow, if that is affirmed on the motion for reconsideration, then we would finally have a final agency action that is reviewable in district court. He would have a Section 32 appeal to the district court? He would, Your Honor, assuming that he timely files and that the Section 32 mechanism is here precisely so that he can have review, not just of the final decision that would impose some discipline, but as this court has held in the Bender case, he would have the opportunity to also review any and all objections that he made throughout the process, going back as far as the OED investigation. For the record, that's the position of the PTO, that you all would not try to preclude him from raising these issues on appeal to the district court. Is that correct? That's correct, Your Honor. There would be no affirmative preclusion. Mr. Farrow would absolutely have the opportunity to raise these, assuming that he follows all the proper procedures, such as following the statute of limitations and filing on time and raising claims that are clearly discernible enough for a court to actually consider this. The other thing that I would point out— Just out of curiosity, why didn't the agency just sort of give in to him in this regard earlier on? You know, district courts sometimes let everything in, right, because it's easier. But in a case like this, it's even more important because there isn't an opposing party that needs to be protected, meaning it's not like Mr. Farrow is up against a defendant whose rights you have to worry about if you let something in. Here, this is all only about him. So why didn't you just let it all in and consider it all? Well, I would actually have two responses to that, Your Honor. First is, I would actually disagree that there is no opposing party in this case because the opposing party here is the public. The USPTO does have an obligation to defend the public against practitioners who have violated the rules of professional conduct that are clearly set forth in the regulations. But how is the public going to be harmed by you letting in all the evidence about whether the exact incidents that you're considering punishing him for are or are not affected by the Florida litigation over those exact same incidents? Absolutely, Your Honor. And I think that relates to my second response, which is that those considerations of what happened in the Florida litigation actually were raised in the disciplinary proceedings below. I think that Mr. Farrow conflates two things incorrectly. On the one hand, he conflates having the opportunity to raise an argument below with having the adjudicator, in this case either the ALJ or the PTO director, agree with him. But the fact that he's actually, and as he conceded, raised the issue that the Florida litigation should have been considered, he did raise that both in his amended answer to the formal complaint. He raised it in the most... Has it been considered? I'm sorry? Has it been considered by the PTO? Has that evidence been before the PTO following an opportunity by, on his part, to have made whatever argument he wants on the basis of that evidence? Has that all been considered by the PTO? That has, Your Honor. That was considered in both the ALJ's initial decision as well as on appeal to the PTO director. The other thing that I... So the evidence was before... The only real question then is whether the decision of the director is or is not correct on the evidence. Is that what you're saying? Not before this court, but that's the only issue. That's the issue before the PTO. That is the issue before the PTO, but that is not the issue here. I understand that's not the issue here. That's the issue before the PTO, and at some point that decision of the PTO can go to the district court under a Section 32 appeal. And where does it go from the district court? Back here? It would, Your Honor, yes. The Section 32 cases, they first go by statute to the Eastern District of Virginia, and then if the decision is adverse to the plaintiff, he can then choose to appeal to this court again. One thing that I would emphasize here is that Mr. Farrow's fundamental objection to what happened below is that the OED investigation itself did not consider what happened in the Florida litigation, and that is that the Florida litigation was ultimately settled. But what Mr. Farrow continues to fail to address is the fact that he's asking for an impossibility. The OED investigation completed in May of 2015, but the Florida litigation didn't settle until September 1, 2015, over three months later. And the other thing that Mr. Farrow fails to appreciate is that the OED investigation is actually limited by regulation to have to be completed within one year, and that there is an opportunity, if Mr. Farrow had so expressed it, to toll that one-year period, but he never did so. And so this OED investigation, by regulation, necessarily had to complete itself by May of 2015. So how does he go about saying to the AJA or whoever he has to say it to, hey, guys, I understand you have to conclude in a year. I understand this new evidence didn't come in until later, but would you kindly look at the new evidence? Has he done that? He has done that, and he's done that on multiple occasions. That's what I seem to think. So I understand that the AJA has considered that evidence. The argument is that had the OED had that evidence, perhaps these proceedings would have never been instituted and the administrative judge wouldn't even be looking at Mr. Farrow's case. That's what his argument is, right? I presume so, Your Honor, but I would defer to Mr. Farrow for how he exactly characterizes that argument. But that's how we understand it, that essentially what he seems to be asking is that the OED investigation might have resulted in a different result. But we also don't know that. But he can raise those arguments later at the conclusion of the disciplinary proceedings. Can you understand his frustration, Mr. Han? He has been charged early on with malpractice. He then got decisions in a settlement saying he didn't engage in malpractice, if I understand the record, and yet your organization keeps looking at the question of whether he should be punished for malpractice. Can you understand his frustration at the fact that you are continuing an investigation that on its merits sounds... I'm not judging it, of course, because it's not in front of us, but it sounds a little spooky. What do we do to help the man? Anything? Well, Your Honor, I think that I would want to clarify one point in your premise, and that is that the PTO is not actually investigating him or engaging in disciplinary proceedings for malpractice. They are engaging in these proceedings because Mr. Farrow has, in the complaint, violated the rules of professional conduct that have been set forth by the PTO, and the elements of the Florida malpractice suit are different from the elements necessary to find a violation of the rules of professional conduct. But it's all based on the same factual event, isn't it? I believe that they do arise from the same event, yes, Your Honor. But the elements are different, and the fact that you have a finding of,  or whether you have a finding of malpractice, that does not necessarily mean that you also have a finding that there was a violation of the rules of professional conduct, and vice versa. Only common sense would suggest that, and I guess agencies don't engage in that activity, do they? Well, Your Honor, I think that may be context-specific as to when there may be some common sense employed. But in this case, there was absolutely a consideration of the malpractice suit below, and that was raised before both the ALJ and the PTO director, and that Mr. Farrow would have the opportunity to raise that argument yet again, which he did in the motion for reconsideration, I believe, and that he could raise that objection again to the district court on a proper Section 32 petition. Do you think we should look forward to the director's reconsideration? Well, Your Honor— There's only so much time and effort the judiciary wishes to put into this, don't you suppose? Yes, Your Honor, and I think that's— That's all the answer I wanted. Thank you. Thank you, Your Honor. If there are no further questions from the panel, I'd be happy to yield the remaining time for my argument. Okay, Mr. Hahn, Mr. Farrow, you have some rebuttal time. I really like Mr. Hahn. He's an excellent advocate. But he left out some very important legal problems. Okay. Number one, the issues— the issues, not collateral estoppel, not ratio d'etat, the issues in the malpractice case were resolved on my motion for summary judgment and on cross-motion summary judgment. In a well-functioning institution, Mr. Farrow, it's your view that they will dismiss the charges against you. No. Is that right? That's not my view. That's not your view? Please let me finish my thought, because this is complicated. There's a doctrine— No, there's a doctrine called defensive issue preclusion and offensive issue preclusion. What result are you looking for? I want to reset the clock, let them refile the complaint, and then if there's a statute of limitations bar, we'll deal with it at that time. Why don't you just want them to dismiss your case? They're never going to dismiss the case. They're never going to dismiss the case. Never going to dismiss it. There's too much political nonsense. The political headwinds for dismissing this case are too strong. Okay. The bottom line here is—the bottom line is, and Ms. Hahn, I believe, misstated the issues. The issue of whether or not the determinations on the federal district court in the malpractice case are binding on the bar is incorrect. There's no such doctrine of defensive issue preclusion. The case is the Supreme Court case, the Sturgis case. The Sturgis case basically says there's six exceptions which you can apply to assert defensive issue preclusion, and there's one more in the Second Circuit. I don't literally fall within those. The ALJ said that I'm precluded from relying on the issues decided by the district court as dispositive of those issues before the patent office. That's the law in this case. There is defensive issue preclusion which does not apply to this case. And even though I prevailed in the—with respect to the Florida Bar, the Florida Bar was identical, an identical complaint. They wouldn't—they dismissed it. So now I have to look forward to this continuation of this process. If there's an adverse decision, then I can look forward to seven or eight reciprocal discipline issues with the various district courts and other bars where I'm admitted. So that's the consequence of this process that I'm involved in. There is no defensive issue preclusion. The issues decided in my favor in the malpractice case are not available to defend against the bar complaint. Okay, Mr. Ferro, thank you for your argument. Thank you, ma'am. I thank both counsel. The case is taken under submission.